**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JACKIE STEFANOWITZ,** | : |
| Plaintiff | : |
| | :    **CIVIL ACTION NO. 3:10-1321** |
| v. | : |
| | :    **(CAPUTO, D.J.)** |
| **SUNTRUST MORTGAGE, INC.,** | :    **(MANNION, M.J.)** |
| Defendant | : |

# REPORT AND RECOMMENDATION[1]

Pending before the court is the defendant's motion to dismiss the plaintiff's complaint. (Doc. No. 10). Based upon the court's review of the motion and related materials, it is recommended that the motion be granted and the plaintiff's complaint be dismissed.

By way of relevant background, the plaintiff filed the instant action on June 25, 2010. (Doc. No. 1). In addition to her complaint to which she attached a supporting brief, the plaintiff filed a motion to proceed in forma pauperis, (Doc. No. 2), and an "Addendum/Claification (sic)/Correction to Brief in Support of Complaint," (Doc. No. 3). On July 15, 2010, a standing practice order was issued to the plaintiff. (Doc. No. 4). On July 16, 2010, the plaintiff filed a supplement to her complaint. (Doc. No. 5).

By order dated July 19, 2010, the plaintiff's motion to proceed in forma

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

pauperis was granted and it was directed that process issue. (Doc. No. 6).

On October 4, 2010, the plaintiff filed a second supplement to her complaint. (Doc. No. 7).

On November 2, 2010, the defendant filed the instant motion to dismiss the plaintiff's complaint, (Doc. No. 10), along with a supporting brief, (Doc. No. 11). The plaintiff filed an opposing brief on December 2, 2010. (Doc. No. 12).

On February 11, 2011, the plaintiff filed a third supplement to her complaint. (Doc. No. 13).

In its motion to dismiss the plaintiff's complaint, the defendant initially argues that the plaintiff has failed to allege the existence of a federal question or damages in excess of the jurisdictional minimum, (i.e., $75,000), which deprives the court of subject matter jurisdiction to hear the plaintiff's claims. (Doc. No. 11, pp. 6-7). In the alternative, the defendant argues that the plaintiff's complaint fails to state a claim upon which relief can be granted. (Doc. No. 11, pp. 7-8).

"When a motion to dismiss is based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b) defenses, the Court should consider the Rule 12(b)(1) challenge first because, if it must dismiss the complaint for lack of subject matter jurisdiction the accompanying defenses become moot and need not be addressed." Walthour v. Herron, 2011 WL 1325981, *1 (E.D.Pa.) (citing Cellco Partnership d/b/a Verizon Wireless and Onstar, LLC v. Dealers Warranty, LLC, 2010 WL 3946713, at

\*3 (D.N.J. Oct. 5, 2010) (quoting Wyeth and Cordis Corp. v. Abbot Labs., 2008 WL 203685, at \*2 (D.N.J. May 8, 2008)); see also Tagayun v. Stolzenberg, 239 Fed.Appx. 708, 710 (3d Cir. 2007) ("An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case."); McCurdy v. Esmonde, 2003 WL 223412, at \*4 (E.D.Pa. Jan. 30, 2003) ("Without jurisdiction the court cannot proceed at all in any cause.") (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

Federal courts are courts of limited jurisdiction and may only decide cases as authorized by Congress or the Constitution. District courts have subject matter jurisdiction over: (1) cases that involve federal questions pursuant to 28 U.S.C. §1331, in which Congress grants courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," and (2) cases where there is complete diversity of citizenship among the parties and the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs" pursuant to 28 U.S.C. § 1332(a).

In considering a motion to dismiss for lack of subject matter jurisdiction, "the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of litigation." Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993). In diversity cases, the plaintiff

3


must demonstrate complete diversity between the parties[2] and that the amount in controversy requirement has been met. Quaker State Dyeing & Finishing Co., Inc., v. ITT Terryphone Corp., 461 F.2d 1140, 1143 (3d Cir. 1972) (citing McSparran v. Weist, 402 F.2d 867, 875 (3d Cir.1968)).

With respect to the instant action, the plaintiff lists no basis for this court's jurisdiction either on her civil cover sheet or in her complaint[3]. In response to the defendant's motion to dismiss her complaint, it would appear that the plaintiff is attempting to assert both diversity and federal question jurisdiction[4].

Concerning the defendant's argument that she has failed to establish the amount in controversy requirement for diversity jurisdiction, the plaintiff

---

[2] There is no issue in the instant action with respect to this element.

[3] On her civil cover sheet, she cites foreclosure as the nature of the matter, but there is no indication from any of her filings that the defendant has, in fact, foreclosed on the property which is the subject of this suit. In fact, as of the plaintiff's third supplement to her complaint, filed on February 11, 2011, correspondence from the defendant indicates that the defendant is still servicing the plaintiff's mortgage and, while there is an indication that the plaintiff's mortgage was past due, there is no indication that foreclosure proceedings have been initiated. (Doc. No. 13, Attachment). With respect to the description of her cause of action, the plaintiff indicates "unlawful foreclosure practice & procedures [b]eginning & historical unethical collection practice patterns."

[4] The court notes that the plaintiff argues that "'the fact that this Court lacks subject matter jurisdiction to hear Plaintiff's claims' is not accurate AND has not been disproven by the Defendant." (Doc. No. 12, p. 2). Despite the plaintiff's position, as discussed above, the burden is on the plaintiff to establish subject matter jurisdiction, not upon the defendant to disprove it.

indicates that "[t]he point of the $75,000.00 issue in exact words is silently implied and the point is well known as one of the requirements." (Doc. No. 12, p. 3). In any event, the plaintiff argues that "[t]he financial transaction at the time of closing and applicable extra expenses totaled in excess of $75,000.00[5]." (Doc. No. 12, p. 2). She then goes on to claim as follows:

> The issues with appropriate reference, otherwise as referenced as counts in additional to property value exceeds $75,000.00.
> Specifically, documentation forwarded through means of the United States Postal System is regulated by the Federal System. Procedures and directives as outlined in the subject matter of the correspondence which was forwarded to the Plaintiff by the Defendant is thus a written instrument which does fall under the Federal System. The document itself falls under the subject matter of; Questioned Documents.
> Taped telephone conversations with arrangements in place and then intentionally changed, is evidence that is considered upon authenticity to be regulated under the Federal System.
> Thus, collectively as issue by issue referenced as count by count does exceed the $75,000.00 requirement.
> Counsel for the Defendant failed to taken (sic) into consideration recommended solutions(s) to the Defendant failure to meet servicing liability and thus starting the process in motion to allude to forced foreclosure which would ultimately cost the Plaintiff additional legal expenses. The cost of "The Morgan Form," and "The Morgan Phamplet (sic)," plus training in order to successfully meet "servicing liability," would add to the cost of this filing.
> Thus, the cost of the property transaction or the solutions given alone independent would almost double the minimum requirement of $75,000.00. Now add the individual issues and place a count violation dollar amount to each would insure

---

[5]The court notes that the plaintiff's exhibits indicate that the original mortgage amount was $54,000. There is no indication as to what the "applicable extra expenses" were which would total in excess of $75,000. (Doc. No. 7).

meeting the $75,000.00 requirement.

(Doc. No. 12, pp. 3-4). The plaintiff states that "[i]nstead of [her] asking for $75,000.00 [she] took satisfaction in presenting relevant evidence which is specific to violations that the Defendant should be made aware of[6]. The plaintiff will gladly take the residual of the $75,000.00 payment after the violations are addressed and resolved." (Doc. No. 12, p. 9).

With respect to diversity jurisdiction, it is plaintiff's burden to establish the amount in controversy. The Court of Appeals for the Third Circuit has recognized:

> In diversity cases, we generally accept a party's good faith allegation of the amount in controversy, but where a defendant or the court challenges the plaintiff's allegations regarding the amount in question, the plaintiff who seeks the assistance of the federal courts must produce sufficient evidence to justify its claims.

Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995). To dismiss a diversity case on the basis the jurisdictional amount was not shown, the court must be "certain that jurisdictional amount cannot be met." The court's inquiry can only focus on facts that existed at the time the complaint was filed. Suber v. Chrysler Corp., 104 F.3d 578, 584 (3d Cir. 1997).

Here, in reviewing the plaintiff's materials, there is nothing to indicate

---

[6]The court notes that the plaintiff does not seek damages in her complaint, but only various acknowledgments by the defendant. (Doc. No. 1).

6

that she would be able to establish the requisite amount in controversy. Initially, although the plaintiff argues that the purchase price of her property, along with additional expenses, exceeded the $75,000 requirement, there is nothing in the plaintiff's filings which would indicate that the purchase price of her property is relevant to the amount of damages in this case. Although the plaintiff indicates on the civil cover sheet that her complaint relates to foreclosure, there is no indication from any of her filings that foreclosure proceedings have ever been initiated.

In fact, the plaintiff's claims center around her dissatisfaction with the system currently in place by the defendant to address various mortgage payment issues. Specifically, the plaintiff alleges that she has never missed a mortgage payment and that credit reports show that her mortgage is "being reported as clean." In May of 2010, she alleges that she wired $500 to the defendant, which was $55.38 short of her payment. Knowing this, she alleges that she contacted the defendant and advised that she would be sending the remaining payment. Despite having received communications from the defendant along the line that, if she could not make her mortgage payment or full mortgage payment, she could call and make arrangements, the plaintiff alleges that she "was not treated in the manor (sic) as expected." The plaintiff alleges that she spoke to a minimum of five people regarding payment arrangements. Despite this, she received a call from the defendant looking for the May payment, at which time she indicated that the payment had already

been sent. The plaintiff was informed that her mortgage payment was received, but returned. The plaintiff indicates that payment arrangements were then made for $605.00 and she was assured that this was satisfactory. The plaintiff states that she later received a call indicating that the $605.00 was not enough.

On June 10, 2010, the plaintiff alleges that she received a letter dated June 2, 2010, which indicated that her total due was over $2,000 without explanation. The plaintiff alleges that she called the defendant and, on a conference call with two individuals, was informed that the letter was incorrect and that she owed an amount of $1159.05. The plaintiff indicates that she made arrangements to pay $1,200[7] and was advised that this was satisfactory. The plaintiff alleges that she then called HOPE and Freddie Mac to discuss the situation with the defendant.

In her supplemental filings, the plaintiff indicates that she wired the $1,200 on June 30, 2010, and phoned the defendant to advise of the payment. At that time, she indicates that there was some discussion regarding the $1,003.50, which was included in the letter of June 2, 2010. The plaintiff indicates that she faxed confirmations of her wired payment to two individuals at a cost of $3.50 each to her.

The plaintiff indicates that she has always made her mortgage payments and usually pays more than the required amount. She claims,

---

[7]The plaintiff does not appear to dispute that she owed this amount.

however, that she has not received monthly statements to show how her payments are being applied for over one year. She indicates that she would like to review her account.

The plaintiff states that the defendant utilizes a confusing communication process wherein she has received multiple calls and correspondences showing different amounts due on her mortgage. When she calls the defendant with questions, she indicates that she cannot speak to the same person twice and cannot get any two individuals to agree on the amount she owes.

In light of how her situation was handled, the plaintiff claims to have developed "a series of communication tools that if the Defendant considers utilizing would be a position to service accounts respectfully." She indicates that she would like to "share and go over these tools so that [the defendant] does not . . . continue to ignore arrangements for some and start processes that ultimately lead to foreclosure."

The plaintiff requests in her complaint only that the defendant make various acknowledgments relating to the claims made in her complaint.

Considering the above, there is nothing either in the plaintiff's original filings or in her opposing materials which would indicate that amount of damages meets or exceeds the threshold requirement to invoke diversity jurisdiction. Thus, the defendant's motion to dismiss should be granted on this basis.

In the alternative, the plaintiff also appears to be attempting to assert federal question jurisdiction. Federal question jurisdiction exists: (1) where federal law creates the cause of action; or (2) where the complaint poses a substantial federal question. Schneller v. Prospect Park Nursing & Rehab. Center, 2009 WL 1838337, *3 (E.D.Pa.) (citing Sodi v. Discovery Financial Services, 2004 WL 2755591 (E.D.Pa. 2004)).

In her opposing materials, the plaintiff references various federal acts, including the Truth in Lending Act, ("TILA"), 15 U.S.C. §§1601, et seq., the Home Mortgage Disclosure Act, ("HMDA"), 12 U.S.C. §§2605, et seq., and the Fair Credit Reporting Act, ("FCRA"), as being regulated by the federal system[8]. To the extent that the plaintiff relies upon these statutes as a basis for federal question jurisdiction, the court will consider each in turn.

With respect to the TILA, the court would have subject matter jurisdiction over claims brought under TILA pursuant to 15 U.S.C. §1640(e), which provides that "[a]ny action under this section may be brought in any United States district court." See Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 500-01 (3d Cir. 1998) (§1640(e) grants jurisdiction over TILA actions to federal courts). However, the TILA contains a one-year statute of

---

[8]The court notes that none of these federal statutes were referenced in the plaintiff's original or supplemental complaints.

limitations[9] that begins to run from the date that the loan closed. See 15 U.S.C. §1640(e). In this case, according to the plaintiff's materials, her loan closed in or about February of 2007. As such, any claim by the plaintiff pursuant to the TILA is well outside of the applicable statute of limitations.

With respect to any claim attempting to be brought pursuant to the HMDA, this statute provides only for administrative enforcement. See 12 C.F.R. §203.6. As such, this statute does not provide a basis for federal question jurisdiction.

Finally, with respect to the FCRA, the only claim made by the plaintiff which could conceivably fall under the FCRA is that inaccurate information relating to her June 2010 mortgage payment was provided to the credit reporting agencies Equifax and Experian. (Doc. No. 7). Specifically, the plaintiff indicates that the reports inaccurately show her June 2010 payment was made late; they indicate that the actual payment amount made in July 2010 was $1,760; and the Experian report reflects that "As of Mar 2017, this account is scheduled to go to a positive status."

"The purpose of the FCRA is to 'insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy.'" Kibbie v. BP/Citibank, 2009 WL

---

[9]The statute also contains a three-year statute of repose for any claim for rescission. See In re Community Bank of Northern Virginia, 62 F.3d 275, 301 n.18 (3d Cir. 2010). However, there is no indication that this is an issue in this case.

2950365 (M.D.Pa., 2009) (Vanaskie, J.) (citing Sites v. Nationstar Mort. LLC, 2009 WL 117844, at *3 (M.D.Pa. 2009) (quoting 15 U.S.C. §1681a(4) (2006)).

The duties of furnishers of information[10] are outlined in 15 U.S.C. §1681s-2. "A furnisher of information is under no duty to conduct an investigation regarding a disputed entry on a consumer's credit card report pursuant to §1681s-2(b) until the furnisher receives notice of the dispute from a consumer reporting agency." Kibbie v. BP/Citibank, supra (citing Krajewski v. Am. Honda Fin. Corp., 557 F.Supp.2d 596, 609 (E.D.Pa. 2008)).

Subsection (d) of Section 1681s-2 provides that section 1681s-2(a) "shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title." 15 U.S.C. §1681s-2(d). Thus, the plaintiff does not have a right to bring a private action pursuant to section 1681s-2(a). Kibbie v. BP/Citibank, supra (citing Sites, 2009 WL 117844, at *4) ("[T]he FCRA limits the enforcement of §1681s-2(a) to government agencies and officials . . . and, relatedly, curtails private rights of action for violations of the act . . ."); Krajewski, 557 F.Supp.2d at 608 ("[T]here is no private right of action based on a furnisher's failure to comply with §1681s-2(a); enforcement of these

---

[10]The FCRA does not define "furnishers of information." However, it is "generally understood to include various types of creditors, such as banks and other lenders, that provide credit information about their customers to other entities that issue consumer reports about the customers' credit worthiness." Kibbie v. BP/Citibank, supra (citing Ross v. Washington Mut. Bank, 566 F.Supp.2d 468, 475 n. 1 (E.D.N.C. 2008)).

provisions is left to federal agencies.").

In Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1060 (9th Cir.2002), however, the court stated:

> It can be inferred from the structure of the statute that Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished. Hence, Congress limited the enforcement of the duties imposed by §1681s-2(a) to governmental bodies. But Congress did provide a filtering mechanism in §1681s-2(b) by making the disputatious consumer notify a CRA [Consumer Reporting Agency] and setting up the CRA to receive notice of the investigation by the furnisher.

Nelson, 282 F.3d at 1060. However, even if the plaintiff has a private right of action pursuant to §1681s-2(b), the duties on the furnisher of the information are not imposed until the furnisher receives notice pursuant to 15 U.S.C. §1681i(a)(2), and that notice must come from a consumer reporting agency, and not the consumer, in order for the requirements of 15 U.S.C. §1681s-2(b) to be triggered. Kibbie v. BP/Citibank, supra (citing Bartell v. Dell Fin. Serv., 2007 WL 89157, at *3 (M.D.Pa. Jan.8, 2007)). It is readily apparent from the plaintiff's filings with this court that no such notice was provided, as she indicates "[a] request is being made <u>through this document</u> that the reporting of June/2010 . . . be removed." (Doc. No. 7) (emphasis added).

Considering the above, with the exception of the plaintiff's TILA claim and FCRA claim pursuant to §1681s-2(b), the defendant's motion to dismiss should be granted for lack of federal question jurisdiction. The plaintiff's TILA claim should be dismissed as barred by the applicable statute of limitations.

13

Finally, the plaintiff's FCRA claim pursuant to §1681s-2(b) should be dismissed on the basis that the defendant was not provided proper notice from a consumer reporting agency in order for the requirements of 15 U.S.C. §1681s-2(b) to be triggered.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

the defendant's motion to dismiss the plaintiff's complaint, **(Doc. No. 10)**, be **GRANTED**.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** April 27, 2011

O:\shared\REPORTS\2010 Reports\10-1321-01.wpd